TEXAS WORKERS' COMPENSATION
COMMISSION, Petitioner,

v.

PATIENT ADVOCATES OF TEXAS
and Allen J. Meril, M.D.,
Respondents.

No. 02–0804.

Supreme Court of Texas.

Argued Sept. 11, 2003.

Decided May 28, 2004.

Thomas S. Leatherbury, Vinson & Elkins, L.L.P., Dallas, P.M. Schenkkan, Graves Dougherty Hearon & Moody, P.C., Austin, T. Daniel Hollaway, Hollaway & Gumbert, Houston, Phyllis B. Schunck, Clark Thomas & Winters, Austin, for Amicus Curiae.

Greg Abbott, Atty. Gen., Howard G. Baldwin, First Asst. Atty. Gen., Jeffrey S. Boyd, Thompson & Knight, Dewey E. Helmcamp III, Asst. Atty. Gen., Barry Ross McBee, Office of Atty. Gen., and Don Walker, Office of Atty. Gen., Austin, for Petitioner.

Bill Aleshire, M.D. Jennifer S. Riggs, Riggs & Aleshire, P.C., Austin, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice SCHNEIDER, Justice SMITH, and Justice BRISTER joined.

In this case, we consider whether the Texas Workers' Compensation Commission (TWCC) substantially complied with the statutory requirements for adopting fee guidelines for medical treatments and services. We also decide whether TWCC exceeded its statutory authority to establish medical policies and guidelines by setting maximum amounts that health care providers may be reimbursed for certain medical services provided to injured workers. We consider whether TWCC's rules for performing audits and determining reimbursement amounts in the absence of specified fee guidelines improperly delegated the agency's audit and fee-setting authority to private entities and whether TWCC possessed the authority to limit the time within which a party may administratively dispute a claim. Finally, we address the constitutionality of the reimbursement guidelines and the time limitations TWCC established to bring an administrative dispute.

We hold that TWCC complied with the statutory requisites for promulgating the fee guidelines and acted within its designated powers in limiting specified medical fee reimbursements and the time to seek medical dispute resolution. We affirm the court of appeals' judgment on these issues. Because we conclude that TWCC did not delegate its power to private entities, we reverse the portion of the court of appeals' judgment that is contrary to this conclusion. We also overrule the constitutional challenge to TWCC's fee reimbursement guidelines and time limitations for commencing medical dispute resolution.

## I. Factual and Procedural Background

In 1989, the Legislature enacted a new Workers' Compensation Act in response to rising medical costs and increasing insurance premiums.[1] *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 512–13 (Tex.1995). The Legislature created the

---

1. The new Act, initially located in articles 8308–1.01 through 8308–11.10 of the Texas Revised Civil Statutes, was codified on September 1, 1993 and now appears in the Labor Code. *See* Tex. Lab.Code §§ 401.001–506.002. We refer to the 1996 Labor Code because this is the version that applies in this case.

Texas Workers' Compensation Commission and gave the agency broad powers to adopt rules necessary for the implementation and enforcement of the Workers' Compensation Act. Tex. Lab.Code § 402.061. One of TWCC's new functions was to establish fee guidelines for reimbursements to health care providers who treat injured workers. *Id.* § 413.011. To this end, the agency promulgated the Texas Workers' Compensation Commission Medical Fee Guideline 1996, adopted by reference in Rule 134.201 of the Texas Administrative Code. *See* 28 Tex. Admin. Code § 134.201 (indicating that copies of the Guideline may be obtained from TWCC's publication department). The Guideline contains the maximum allowable reimbursements (MARs) for thousands of medical procedures. The MARs establish upper limits on the amount of reimbursements payable to health care providers for the listed treatments or services. TWCC also promulgated a set of rules, now commonly referred to as the "Dispute and Audit Rules," which establish a process for insurance carriers to review and audit bills submitted by health care providers. *Id.* §§ 133.301–.305.[2] The rules also set up dispute resolution procedures to resolve disagreements over the necessity of medical procedures and the amount of reimbursements. *Id.* § 133.305. Requests for medical dispute resolution must be filed not later than one year from the date of the medical service. *Id.* § 133.305(d).

TWCC's adoption of the Guideline and the Dispute and Audit Rules are at the base of this dispute. Patient Advocates of Texas and Allen J. Meril, M.D. (collectively PAT) initiated this lawsuit claiming that TWCC did not follow the rulemaking pro-

cedures required by statute when promulgating the Guideline. Additionally, PAT asserts that TWCC exceeded its rulemaking authority by setting a ceiling on many medical fee reimbursements and limiting the time for a party to seek medical dispute resolution to one year from the date the medical service was provided. PAT also challenges the validity of the Dispute and Audit Rules alleging that TWCC illegally delegated its audit and fee-setting authority to private insurance carriers. Lastly, PAT raises constitutional challenges to the rules on the grounds that the MARs and the one-year time limitation constitute a taking of their property without due process and just compensation. In response, TWCC argues that its enactment of the Guideline meets statutory procedural requirements and the limits placed on medical payments are consistent with the agency's authority to establish medical policies and guidelines pursuant to section 413.011 of the Labor Code. TWCC claims that it retains its power to audit workers' compensation participants and establish medical fees, and that the Dispute and Audit Rules are simply a means to facilitate insurance carriers' review of the medical claims submitted by health care providers.

The parties filed cross-motions for summary judgment. The trial court rendered a final judgment in favor of TWCC, denying PAT's motion for summary judgment. The court of appeals affirmed in part and reversed in part, holding that TWCC impermissibly delegated its audit authority to private insurance carriers, and therefore, did not rule on the constitutional challenge to the Dispute and Audit Rules. 80 S.W.3d 66, 81. The court of appeals up-

---

**2.** The Dispute and Audit Rules have been twice amended since the original suit was brought in district court. The parties have amended their pleadings to incorporate changes to the rules made by the 2000 amendments, so we refer to this version of the Texas Administrative Code.

held the remaining portions of the summary judgment. *Id.* Both TWCC and PAT petitioned this Court for review.

## II. Standard of Review

 When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). The reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props.,* 22 S.W.3d at 872; *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995). We now turn to the evidence presented by TWCC and PAT and consider whether summary judgment was properly granted.

## III. The Medical Fee Guideline

PAT argues that the version of the Medical Fee Guideline that TWCC adopted is invalid because TWCC did not substantially comply with the rulemaking procedures set forth under certain provisions of the Administrative Procedure Act (APA). Tex. Gov't Code § 2001.002 (1996).[3] Specifically, PAT alleges that TWCC (1) failed to comply with section 2001.033(1) of the APA by not including a reasoned justification for the Guideline; (2) failed to comply with section 2001.023(a) by not republishing the Guideline after amending it; (3) failed to comply with section 2002.014 by not making a copy of the proposed rule available to the public; and (4) failed to

comply with section 2001.030 by not providing a statement of reasons for or against adopting the Guideline. For the reasons stated below, we affirm the court of appeals' judgment overruling PAT's procedural challenges to TWCC's enactment of the Guideline. *See* 80 S.W.3d at 75.

### A. Reasoned Justification

 The APA requires an administrative agency to provide a reasoned justification for a rule it promulgates in the order adopting it. Tex. Gov't Code § 2001.033(1). That is, the order must include how and why the agency reached the conclusions it did for adopting the rule, and the conclusions must be presented in a relatively clear, precise, and logical fashion. *Nat'l Ass'n of Indep. Insurers v. Tex. Dep't of Ins.,* 925 S.W.2d 667, 669 (Tex. 1996). The order also must provide (1) a summary of the comments received from interested parties; (2) a restatement of the factual basis for the rule; and (3) the reasons why the agency disagrees with the comments. Tex. Gov't Code § 2001.033(1)(A)-(C); *Nat'l Ass'n of Indep. Insurers,* 925 S.W.2d at 669. If an order fails to substantially comply with these requirements, the rule is invalid. Tex. Gov't Code § 2001.035(a); *Nat'l Ass'n of Indep. Insurers,* 925 S.W.2d at 669. Requiring an agency to demonstrate a rational connection between the facts before it and the agency's rules promotes public accountability and facilitates judicial review. *Nat'l Ass'n of Indep. Insurers,* 925 S.W.2d at 669.

 In the order adopting Rule 134.201, TWCC provided its reasons for enacting

---

**3.** Subsequent to this action, the Legislature amended the APA, effective September 1, 1999. Act of June 18, 1999, 76th Leg., R.S., ch. 558, § 2. Since these revisions apply prospectively and do not govern the issues in this case, all further statutory references to the APA herein are to the version in effect on February 15, 1996, the date TWCC adopted the Guideline.

the Guideline. 21 Tex. Reg. 2361–92 (1996). Among other things, TWCC explained that based on an extensive national study by the Workers' Compensation Research Institute comparing fee reimbursement systems of twenty-seven states, Texas's workers' compensation system's reimbursements for specified procedures significantly exceeded the national median. 21 Tex. Reg. at 2362. TWCC's own analysis confirmed this conclusion. *Id.* TWCC enacted the Guideline "to move Texas towards a median cost position in comparison with other states and towards a market based system which reimburses based on values set by the market for [medical] procedures...." *Id.* TWCC also explained its rationale for adopting statewide rates instead of utilizing regional MARs. *Id.* The agency's analysis found that the minimal overall variance in reimbursements among the various regions of the state did not justify developing a medical fee guideline with regional MARs. *Id.*

Throughout the adoption order, TWCC provided factual evidence, policy objectives, and legal rationale for its decisions. *See id.* at 2361–92. The order included a summary of the written comments from interested parties and TWCC's responses to them. *Id.* at 2367–91. TWCC provided an extensive explanation of its reasoning for adopting the Guideline. Thus, TWCC substantially complied with the reasoned justification requirement of the APA.

## B. Republication

■ TWCC published proposed Rule 134.201 in the October 20, 1995 issue of the Texas Register to notify persons of the agency's intent to adopt the Medical Fee Guideline and to allow interested parties to comment on the rule. 20 Tex. Reg. 8573–75 (1995). The proposed Guideline included a section on durable medical equipment. *Id.* at 8573–74. After receiving comments

from over one hundred seventy individuals and businesses, TWCC made changes to the Guideline, including modifications to the durable medical equipment section, and then adopted the Guideline. 21 Tex. Reg. at 2361, 2365–66. TWCC explained in the order adopting Rule 134.201 that these changes were in response to public comment. *Id.* at 2365. In the proposed rule, TWCC stated that reimbursement for durable medical equipment would be based on documentation of procedure rather than on the MARs. 20 Tex. Reg. at 8574. The final rule adopted by TWCC, however, set reimbursement for durable medical equipment at the amount pre-negotiated between the provider and carrier, or if there was no pre-negotiated rate, at the fair and reasonable amount. 21 Tex. Reg. at 2363, 2365. PAT argues that the changes to the durable medical equipment section expanded the coverage of Rule 134.201 to include categories of persons not previously affected by the proposed rule, and therefore, TWCC was required to republish Rule 134.201 and provide a new period for public comment before the agency could legally adopt the Guideline.

The APA requires a state agency to give at least thirty days' notice of its intention to adopt a rule before adopting the rule. Tex. Gov't Code § 2001.023(a). The agency must file notice of the proposed rule with the secretary of state for publication in the Texas Register. *Id.* § 2001.023(b). Notice of a proposed rule consists of, among other things, a brief explanation of the proposed rule, the text of the proposed rule, and a request for comments on the proposed rule from any interested person. *Id.* § 2001.024(a)(1)-(2), (7).

The court of appeals, following the standard espoused in *State Board of Insurance v. Deffebach*, 631 S.W.2d 794, 801 (Tex. App.-Austin 1982, writ ref'd n.r.e.), held that TWCC did not violate the notice re-

quirement of the APA by not republishing the modified Guideline. 80 S.W.3d at 74–75. In *Deffebach*, the sole published opinion of a Texas court on this issue, the court indicated that if a proposed rule is changed to incorporate public comments and no new subjects of regulation or persons besides those previously given notice are affected, then no further purpose would be served by requiring republication of the proposed rule. 631 S.W.2d at 801.

The notice requirements of the federal Administrative Procedure Act are similar. *See* 5 U.S.C. § 553. An agency's notice of proposed rulemaking must include "either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* § 553(b)(3). A majority of federal courts of appeals have held that under the federal APA the original notice is adequate if the modified final rule is a "logical outgrowth" of the published provisions. *Am. Med. Ass'n v. United States*, 887 F.2d 760, 767 (7th Cir.1989); *Brazos Elec. Power Coop. v. Southwestern Power Admin.*, 819 F.2d 537, 543 (5th Cir.1987); *Nat'l Black Media Coalition v. FCC*, 791 F.2d 1016, 1022 (2d Cir.1986); *AFL–CIO v. Donovan*, 757 F.2d 330, 338 (D.C.Cir.1985); *Chocolate Mfrs. Ass'n v. Block*, 755 F.2d 1098, 1105 (4th Cir.1985); *BASF Wyandotte Corp. v. Costle*, 598 F.2d 637, 642 (1st Cir.1979). Stated differently, if the final rule does not materially alter the issues addressed in the proposed rule, then notice will be deemed sufficient. *Chocolate Mfrs.*, 755 F.2d at 1105; *see also Chrysler Corp. v. Dep't of Transp.*, 515 F.2d 1053, 1061 (6th Cir.1975) (a final rule is valid if it does not embrace any major subjects that were not described in the proposed rule).

The standard for proper notice announced in *Deffebach* and the logical outgrowth test employed by the federal courts are not inconsistent. A final rule that significantly changes the issues involved in the rulemaking process raises new subjects and likely affects different persons than those previously given notice. The relevant inquiry under both standards is whether the agency's notice fairly apprises affected parties of the pertinent issues to allow them to comment and participate in the rulemaking process in a meaningful and informed manner. *See Deffebach*, 631 S.W.2d at 800–801; *see also Am. Med. Ass'n*, 887 F.2d at 767; *Brazos*, 819 F.2d at 543; *Nat'l Black Media*, 791 F.2d at 1022; *Chocolate Mfrs.*, 755 F.2d at 1104; *California v. Block*, 690 F.2d 753, 772 (9th Cir.1982); *BASF Wyandotte*, 598 F.2d at 642; *Am. Iron & Steel Inst. v. EPA*, 568 F.2d 284, 293 (3d Cir.1977).

■ We hold that a rule adopted by an administrative agency is a logical outgrowth of the proposed rule if the final rule does not materially alter the issues raised in the proposed rule. If an agency adopts a rule that comports with this standard, then the notice requirement of section 2001.023(a) is satisfied. This approach supports the rationale of the notice and comment requirement which is "the expectation that the final rules will be somewhat different and improved from the rules originally proposed by the agency." *Trans–Pacific Freight Conf. v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1249 (D.C.Cir. 1980).

In the instant case, both the proposed rule and the final rule adopting the Guideline addressed durable medical equipment. 20 Tex. Reg. at 8573–74; 21 Tex. Reg. at 2361, 2363–65. The proposed rule apprised affected parties of TWCC's intention to change the method for determining durable medical equipment reimbursements and indicated the method the agency was contemplating. 20 Tex. Reg. at 8573–74. In response to comments TWCC received from affected parties, the final

rule modified the approach for calculating reimbursements for durable medical equipment. 21 Tex. Reg. at 2365. This change, however, did not materially alter the issues raised in the proposed rule or affect persons other than those previously on notice. We are therefore persuaded that Rule 134.201 was a logical outgrowth of the published provisions.

## C. Copies of the Guideline

■ PAT argues that copies of the proposed Guideline were not available to the public after the Guideline was adopted in its final form to allow a side-by-side analysis of changes to the rule. This, however, is not an APA requirement.

The APA permits the secretary of state to omit information otherwise required to be published in the Texas Register if publication of the information would be cumbersome, expensive, or otherwise inexpedient, provided that copies of the omitted material are made available at a specified location by the adopting agency. Tex. Gov't Code § 2002.014. The purpose of section 2002.014 is to allow interested parties to obtain a copy of the material omitted from the Texas Register, prior to a rule's adoption, so that they may participate in the rulemaking process. This purpose was served in the present case. The Guideline, which is over 400 pages in length, was published in the Texas Register by reference on October 20, 1995. 20 Tex. Reg. at 8573–75. In the rule proposal, TWCC stated that interested parties could obtain copies of the Guideline at the agency's place of business. 20 Tex. Reg. at 8574–75. Evidenced by the numerous comments that TWCC received and subsequently addressed in the adoption order for Rule 134.201, *see* 21 Tex. Reg. at 2366–91, copies of the proposed Guideline were available, and many persons took the opportunity to offer meaningful and timely comments for TWCC's consideration. TWCC complied with the procedures specified under section 2002.014 of the Government Code.

## D. Statement of Reasons

■ PAT's last procedural challenge is that TWCC failed to provide a concise statement of the principal reasons for the agency's adoption of the Guideline when PAT requested it. The APA requires a person desiring a statement of reasons for or against adoption of a rule to submit a request "either before adoption or not later than the 30th day after the date of adoption." Tex. Gov't Code § 2001.030. TWCC voted to adopt Rule 134.201 on February 15, 1996. PAT argues that on May 30, 1996 they requested from TWCC a statement of reasons for overruling the considerations urged against adoption of the Guideline. This request was made over one hundred days after the Guideline was adopted and well beyond the APA's thirty-day requirement.

PAT argues that "the date of adoption" under section 2001.030 means the effective date, which in this case was April 1, 1996. However, we enforce the clear and unambiguous language of section 2001.030. *See Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex.1999). Section 2001.030 refers to the actual date a rule is adopted and does not include a reference to a rule's effective date. Even if we were to agree with PAT that "the date of adoption" under section 2001.030 is the date a rule takes effect, PAT's request for a statement of reasons still would fall outside the thirty-day deadline in section 2001.030. TWCC's refusal to provide PAT with a statement of reasons for overruling the considerations urged against adopting Rule 134.201 did not violate section 2001.030.

## IV. Maximum Allowable Reimbursements

▮ Rule 134.201 establishes guidelines for reimbursements made for medical treatments or services rendered by health care providers. When a MAR is established for a particular medical treatment or service, the amount of reimbursement payable to a health care provider is the lesser of the provider's usual fees and charges or the MAR established in the Medical Fee Guideline. 21 Tex. Reg. at 2361. PAT argues that the Labor Code does not authorize TWCC to impose these "caps" on medical fees. TWCC responds that it must establish the MARs to carry out the Legislature's directives in the Workers' Compensation Act. TWCC relies on section 413.011 of Labor Code to support its contention that the Legislature granted it authority to set upper limits on medical payments through use of the MARs.

▮ A state administrative agency only has those powers that the Legislature expressly confers upon it or that are implied to carry out the express functions or duties given or imposed by statute. *Pub. Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 315–16 (Tex.2001); *Pub. Util. Comm'n v. GTE–Southwest, Inc.*, 901 S.W.2d 401, 407 (Tex.1995); *R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992); *see also* Tex. Gov't Code § 2001.174(2)(A)-(B) (a reviewing court must reverse or remand a case for further proceedings if an agency's actions violate a statutory provision or exceeds the agency's statutory authority). In construing a statute, our objective is to determine and give effect to the Legislature's intent first by looking to the statute's plain and common meaning. *Albertson's*, 984 S.W.2d at 960. We liberally construe the provisions of the Workers' Compensation Act to carry out the Legislature's evident purpose of compensating injured workers and their dependents. *Id.* at 961; *Lujan v. Houston Gen. Ins. Co.*, 756 S.W.2d 295, 297 (Tex. 1988).

The Legislature vested TWCC with the power and authority to promulgate rules as necessary for the implementation and enforcement of the Workers' Compensation Act. Tex. Lab.Code § 402.061. Section 413.011 of the Labor Code is a mandate to TWCC to "establish medical policies and guidelines relating to ... fees charged or paid for medical services for ... compensable injuries, *including guidelines relating to payment of fees for specific medical treatments or services.*" *Id.* § 413.011(a)(1) (emphasis added). These guidelines "must be fair and reasonable and designed ... to achieve effective medical cost control." *Id.* § 413.011(b). While the Legislature does not expressly instruct TWCC to set maximums on the amounts insurance carriers can reimburse health care providers for specific medical procedures, it does expressly require TWCC to achieve effective medical cost control and to establish guidelines for the payment of fees for specific medical services. *See id.* Establishing the MARs for medical treatments and services is an implied power that is reasonably necessary for TWCC to carry out the Legislature's intent. *See City Pub. Serv. Bd.*, 53 S.W.3d at 315–16; *GTE–Southwest*, 901 S.W.2d at 407; *Lone Star Gas*, 844 S.W.2d at 685. TWCC's establishment of the MARs is therefore a valid exercise of its rulemaking power.

## V. The Dispute and Audit Rules

▮ The Dispute and Audit Rules create a process by which insurance carriers can review retrospectively the medical claims of health care providers. *See* 28 Tex. Admin. Code §§ 133.301–.305. The rules permit carriers to retrospectively review claims at their own offices or through

an onsite audit of providers. *Id.* § 133.301(a). A carrier wishing to conduct an onsite audit must provide notice to the health care provider, and in turn, the provider must make available all documentation identified as relevant to the subject of the audit. *Id.* §§ 133.302(a), 133.303(a). Based upon the information obtained from retrospective review, a carrier must pay or deny the claim consistent with the results of the review. *Id.* § 133.304(a)-(b), (e). If the provider believes the carrier has failed to pay an appropriate amount, then the provider first must ask the carrier to reconsider the claim, and then may subsequently file a request for medical dispute resolution with TWCC if the issue is not resolved. *Id.* § 133.304(k), (m). If still dissatisfied with the outcome, the provider has recourse to the State Office of Administrative Hearings (SOAH) and finally to the courts. Tex. Lab.Code § 413.031.

An additional aspect of the Dispute and Audit Rules requires insurance carriers to develop a method for calculating reimbursement amounts when there is a treatment rendered by providers for which no MAR has been established. *Id.* § 133.304(i). The methodology employed by carriers must result in fair and reasonable reimbursement amounts to ensure that similar medical procedures provided in similar circumstances receive similar reimbursements. *Id.* Additionally, carriers must explain and document the methodologies they used to calculate the fees paid, reference the methods in their claim files, and explain and document any deviation from their usual methods in determining a rate of reimbursement. *Id.* A health care provider that disagrees with a carrier's determination of the reimbursement amount may initiate the dispute resolution process. *Id.* § 133.304(m).

PAT claims that the Dispute and Audit Rules give private insurance carriers a large amount of discretionary power to conduct audits and set fees, which are functions the Legislature reserved solely for TWCC. PAT argues that this constitutes an improper delegation of TWCC's audit and fee-setting authority to private entities. TWCC responds that the carrier review and audit function set forth under the Dispute and Audit Rules are vital to carrying out the Legislature's mandate to provide fair and reasonable reimbursements while simultaneously controlling medical costs. TWCC contends that it is impossible for the agency itself to review every medical claim to ensure compliance with the fee guidelines due to the millions of medical bills generated yearly across the state under the workers' compensation system. The court of appeals concluded that TWCC improperly delegated its audit powers to private insurance carriers, and therefore invalidated the Dispute and Audit Rules. 80 S.W.3d at 80. The issue of whether TWCC made a private delegation specifically of its fee-setting authority was not addressed in the court of appeals' opinion.

The legality of an administrative agency's delegation of power to a private entity is an issue of first impression for this Court, but we have considered legislative delegations of authority directly to private entities. In *FM Properties*, we emphasized that a delegation occurs only when an entity is given the power and the discretion to set public policy and promulgate rules to achieve that policy, or ascertain conditions upon which existing laws may operate. 22 S.W.3d at 873, 880; *see also Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 470–71 (Tex. 1997); *Hous. Auth. of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79, 87 (1940). If a statute delegates such authoritative power to private interested parties, it is a private delegation. *FM*

*Props.,* 22 S.W.3d at 880; *Boll Weevil,* 952 S.W.2d at 470–71.

We recognize that because a legislative body would be hard pressed to contend with every detail involved in carrying out applicable laws, delegation of some legislative power is both necessary and proper. *FM Props.,* 22 S.W.3d at 873; *Boll Weevil,* 952 S.W.2d at 466. However, the Legislature's power to delegate must be exercised with a certain amount of caution. *Boll Weevil,* 952 S.W.2d at 466. The Legislature may delegate its powers to administrative agencies established to carry out legislative purposes as long as the Legislature establishes reasonable standards to guide the agencies in exercising those powers. *FM Props.,* 22 S.W.3d at 873; *Proctor v. Andrews,* 972 S.W.2d 729, 734 (Tex.1998); *Boll Weevil,* 952 S.W.2d at 467; *Lone Star Gas,* 844 S.W.2d at 689. Likewise, the Legislature may delegate its powers to private entities " 'if the legislative purpose is discernible and there is protection against the arbitrary exercise of power.' " *Proctor,* 972 S.W.2d at 735 (quoting *Office of Pub. Ins. Counsel v. Tex. Auto. Ins. Plan,* 860 S.W.2d 231, 237 (Tex. App.-Austin 1993, writ denied)); *accord Boll Weevil,* 952 S.W.2d at 472. However, delegations of legislative authority to private entities are subject to "a more searching scrutiny" than delegations to their public counterparts. *Boll Weevil,* 952 S.W.2d at 469; *accord FM Props.,* 22 S.W.3d at 874; *Proctor,* 972 S.W.2d at 735. Thus, we established a multi-factor test to determine if the Legislature has impermissibly delegated its authority to a private entity. *See Boll Weevil,* 952 S.W.2d at 472.

To determine whether the Dispute and Audit Rules constitute an impermissible delegation of an administrative agency's power to a private entity, we first decide if there was in fact a delegation of power.

Specifically, we consider whether the Dispute and Audit Rules allow private insurance carriers to execute functions that the Legislature delegated to TWCC.

### A. TWCC's Audit Authority

TWCC maintains that the auditing powers granted it by the Labor Code are separate and distinct from the auditing process established by the Dispute and Audit Rules. TWCC claims that it conducts its own independent reviews and audits of health care providers and insurance carriers and that the Dispute and Audit Rules relate to a different matter—the review and processing of medical bills. TWCC argues that the rules set out a fair and balanced approach to the payment of medical bills by specifying each party's responsibilities and limitations within the workers' compensation system and therefore do not delegate TWCC's auditing authority. We agree.

The Labor Code vests TWCC with the power to audit insurance carriers and health care providers. *See* Tex. Lab.Code §§ 413.001–.054. TWCC must maintain a division of medical review to monitor workers' compensation participants and ensure they comply with the rules adopted by the agency. *Id.* § 413.002(a)-(b). Additionally, TWCC is required to promulgate rules to establish programs for the systematic monitoring of the necessity of treatments rendered and fees charged and paid for medical treatments or services. *Id.* § 413.013(2). TWCC must also establish rules for the review and audit of payments carriers make to providers to ensure that both parties comply with the medical policies and fee guidelines established by the agency. *Id.* § 413.015(b).

The Dispute and Audit Rules, on the other hand, permit insurance carriers to retrospectively review medical bills to gather additional information for purposes

of paying or denying a medical claim. 28 Tex. Admin. Code § 133.301. This process aims to provide necessary information so that carriers may analyze fees charged and check medical necessity prior to making reimbursements. The Dispute and Audit Rules set out in great detail the procedures carriers must follow when conducting onsite audits. *Id.* §§ 133.302–.303. Under the framework of TWCC's rules, insurance carriers have no power to set public policy or promulgate rules to accomplish that policy. *See FM Props.*, 22 S.W.3d at 873, 880; *Boll Weevil*, 952 S.W.2d at 470–71. Moreover, the Dispute and Audit Rules do not give carriers the authority to ascertain the conditions upon which existing laws will apply. *See FM Props.*, 22 S.W.3d at 873, 880; *Higginbotham*, 143 S.W.2d at 87. Instead, carriers must follow the policy mandated by the Legislature in the Labor Code and executed by TWCC in the Dispute and Audit Rules. Independent of the audit process defined by the rules, TWCC reviews and audits carriers and providers to monitor their activities and ensure compliance with the agency's guidelines. Tex. Lab.Code §§ 413.002, 413.015. In this instance, TWCC retains all the powers delegated to it by the Legislature. Thus, the Dispute and Audit Rules do not delegate TWCC's audit authority to private insurance carriers but are a means for TWCC to fulfill its statutory duties. *See City Pub. Serv. Bd.*, 53 S.W.3d at 315–16; *GTE–Southwest*, 901 S.W.2d at 407; *Lone Star Gas*, 844 S.W.2d at 685.

## B. TWCC's Fee–Setting Authority

Similar to its contention that the Dispute and Audit Rules constitute a private delegation of TWCC's audit power, PAT alleges that the rules also delegate TWCC's fee-setting authority. PAT argues that permitting insurance carriers to develop a methodology to determine reimbursement amounts where TWCC has not determined a MAR gives carriers unfettered discretion and allows them to engage in secret rulemaking. TWCC counters that the Dispute and Audit Rules require carriers to make consistent and fair payments to each provider in the absence of a fee guideline and that any deviation from carriers' usual method in determining the rate of reimbursement must be explained and documented. TWCC further argues that the carrier-developed methodologies must incorporate the statutory standards set forth in section 413.011 of the Labor Code, which is to establish "fair and reasonable" reimbursements that "are designed to ensure the quality of medical care and to achieve effective medical cost control."

 The Legislature assigned TWCC the task of establishing medical policies and guidelines for fees charged or paid for medical services. Tex. Lab.Code § 413.011(a). The agency complied with this mandate, in part, by promulgating the Medical Fee Guideline. *See* 28 Tex. Admin. Code § 134.201. The Guideline is over four hundred pages long and sets forth MARs for thousands of medical treatments and services. We recognize that it may be impossible for TWCC to create a comprehensive guideline covering all possible medical procedures that an injured employee might require.[4] Although our analysis in *Lone Star Gas* was in the context of a legislative delegation, the logic of the case is applicable to these analogous circumstances: an administrative agency's failure to include every spe-

---

4. In addition, TWCC explained that some medical services "are unusual or too variable to have an assigned MAR." Texas Workers' Compensation Commission Medical Fee Guideline 1996, General Instruction III, at 1.

cific detail and anticipate unforeseen circumstances when promulgating rules does not invalidate the rules. 844 S.W.2d at 689; *accord Boll Weevil*, 952 S.W.2d at 467 (citations omitted).

The Dispute and Audit Rules contain specific standards that a carrier must follow in calculating fees when a MAR has not been established: (1) the methodology used must be consistently applied to determine fair and reasonable reimbursement amounts that are uniformly paid for similar procedures under similar circumstances; (2) the method must be explained and documented and referenced in the claim file; and (3) any deviation from the usual method established to calculate fees must be explained and documented. 28 Tex. Admin. Code § 133.304(i). With regard to the first requirement, TWCC has defined "fair and reasonable reimbursement" to mean a reimbursement that meets the standards set out in section 413.011 of the Labor Code. *Id.* § 133.1(a)(8). Thus, where no MARs have been established, carriers are required to apply methodologies that determine fair and reasonable medical fees, ensure quality medical care to injured workers, and achieve effective cost control. Tex. Lab. Code § 413.011(b).

PAT contends that this process is an invalid delegation of TWCC's fee-setting authority to insurance carriers because TWCC's rules allegedly give carriers the legislative power to unilaterally establish reimbursements for medical treatments and services for which no MARs exist. We consider PAT's argument in context. According to figures relied on by PAT, in calendar year 2000 approximately 0.02% of the more than 10,000,000 medical claims submitted to insurance carriers for reimbursement involved fee disputes. Because these claims included services covered by MARs and services for which MARs did

not exist, less than 0.02% of claims submitted to TWCC for review involved fee disputes over procedures not covered by MARs. It is for the less than 0.02% of the medical fees at issue that PAT claims insurance carriers unilaterally set the reimbursement amounts.

PAT's argument that carriers solely establish fees in the absence of specific reimbursement guidelines ignores reality. Health care providers determine the initial bills for medical services by billing insurance carriers their usual and customary charges. Texas Workers' Compensation Commission Medical Fee Guideline 1996, General Instruction VI, at 2. This first step is the same where a MAR has been established for a particular medical procedure and where no MAR exists. *Id.* In both situations, carriers review the bills submitted and pay or deny them in accordance with TWCC's rules—the MARs in the Medical Fee Guideline or the procedures delineated in the Dispute and Audit Rules. *Id.* When a provider bills a carrier for a service or treatment that has no specific MAR attached, the carrier must develop and consistently apply a methodology which determines a fair and reasonable reimbursement amount. *See* 28 Tex. Admin. Code § 133.304(i)(1). However, it is the provider that initially sets the fee when it submits a claim to the carrier for payment.

Moreover, carriers do not make the final determination of the fees for disputed claims. If a carrier and a provider disagree on the reimbursement amount, TWCC, not the carrier, makes the decision on the proper payment, subject to review. *See* Tex. Lab.Code §§ 413.013(1), 413.031(a); 28 Tex. Admin. Code §§ 133.304(m), (p), 133.305(b)(3)-(4). Any party that is not satisfied with the outcome may continue the review process through

SOAH and then the courts. Tex. Lab. Code § 413.031(d).

As discussed, carriers must follow TWCC's rules in establishing methodologies for determining medical fees when reimbursing health care providers in the absence of specific fee guidelines. *See* 28 Tex. Admin. Code § 133.304(i). Contrary to PAT's argument, this process does not allow carriers to employ secret methodologies. The Dispute and Audit Rules do not grant carriers hidden and unbridled discretion to arbitrarily set payments, but give them specific instructions on the procedures they are to follow. *Id.* The methodologies employed and the conclusions reached must be documented and available for TWCC's scrutiny. *Id.* The Dispute and Audit Rules set out a legitimate approach to payment of medical bills by specifying each private party's responsibilities and limitations, consistent with the enabling legislation. Health care providers submit bills for payment and insurance carriers review and process the bills, and either party may dispute the reimbursement. Tex. Lab.Code § 413.031(a); Texas Workers' Compensation Commission Medical Fee Guideline 1996, General Instruction VI, at 2. Carriers are not allowed to determine public policy and do not unilaterally establish medical fees;[5] they operate within TWCC's guidelines and in accordance with its rules. *See FM Props.,* 22 S.W.3d at 873, 880; *Boll Weevil,* 952 S.W.2d at 470–71. Additionally, carriers are not given the authority to ascertain conditions upon which existing workers' compensation laws may operate. *See FM Props.,* 22 S.W.3d at 873, 880; *Higginbotham,* 143 S.W.2d at 87. Therefore, we cannot say that a private insurance carrier's act of reviewing medical bills

and determining a reimbursement amount when no MAR has been established falls within the legal definition of a delegation.

Since we conclude that there is no delegation of TWCC's authority to audit participants in the workers' compensation system or to set fees, we need not consider whether a delegation meets the test set forth in *Boll Weevil.* We hold that the Dispute and Audit Rules were promulgated in accordance with the provisions in the Labor Code and provide a permissible form of carrier review of medical claims. We therefore reverse this part of the court of appeals' judgment.

## VI. One–Year Limitation

The Dispute and Audit Rules require a party to file a request for medical dispute resolution with TWCC not later than one year after the date of the medical service in dispute. 28 Tex. Admin. Code § 133.305(d). PAT claims that there is no legislative authority for TWCC to impose a time limitation on a health care provider's right to seek reimbursement. TWCC contends that the one-year limitation is within the agency's authority because Rule 133.305 is in harmony with the general objectives of the statute. To address this issue, we first look to the plain language of the Labor Code to ascertain legislative intent. *See Albertson's,* 984 S.W.2d at 960. Then we determine if TWCC was acting outside the scope of its delegated power without the express or implied consent of the Legislature. *See City Pub. Serv. Bd.,* 53 S.W.3d at 315–16; *GTE–Southwest,* 901 S.W.2d at 407; *Lone Star Gas,* 844 S.W.2d at 685.

Section 413.031 of the Labor Code entitles parties to administrative review of disputed issues, including the proper re-

---

5. Insurance carriers can be penalized for, inter alia, failure to process claims promptly and for unreasonably disputing the reason-

ableness and necessity of health care. Tex. Lab.Code § 415.002(a)(11), (19); *see also* 28 Tex. Admin. Code § 134.201(b).

imbursement amount for health care treatments and services. Section 413.013 requires TWCC to promulgate rules to establish a program for resolving these medical disputes. The plain language of the Labor Code thus shows that TWCC is empowered to establish a medical dispute resolution process. Such a process must have a beginning and an end. The imposition of the one-year limitation is consistent with the express duties that the Legislature confers upon TWCC. Rule 133.305 is a valid exercise of TWCC's power to establish a medical dispute resolution process.

## VII. Constitutional Challenge

PAT claims that establishment of the MARs and the imposition of the one-year time limitation constitute takings of their property without due process and compensation because they have a statutory right to reimbursement. PAT only minimally addresses this claim, but it appears that they offer two contentions in support of the alleged due process violations: (1) the MARs set a cap on fees for specified medical procedures that deprive providers of the full value of their medical services, and (2) the one-year limitation promulgated in the Dispute and Audit Rules enables insurance carriers to deny claims for reimbursement where no such limit exists in the Labor Code. Without deciding whether the claimed rights to reimbursement constitute vested property rights, we consider PAT's claim that its due process rights were violated.

■■ Texas's due course of law clause and the federal due process clause are textually different, but we generally construe the due course clause in the same way as its federal counterpart. *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995). Accordingly, we rely on federal and Texas case law that addresses due process issues in analyzing PAT's constitutional challenge.

### A. Procedural Due Process

■■ A deprivation of personal property without due process violates the United States and Texas Constitutions. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (the procedural due process guarantee protects against "arbitrary takings") (citing *Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)); *accord In re J.F.C.*, 96 S.W.3d 256, 300 (Tex.2002). Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex.2001); *Than*, 901 S.W.2d at 930.

■■ On their face, the relevant statutes protect any procedural due process rights to which the participants are entitled in the workers' compensation system. As previously discussed, a health care provider has the right to seek dispute resolution when it is denied payment or paid a reduced reimbursement amount for the medical service rendered. *See* Tex. Lab. Code § 413.031(a). A health care provider who charges a medical fee in excess of the MARs may also seek dispute resolution to attempt to establish that reasonable medical justification exists for the deviation. *See id.* § 413.031(b). A party that is dissatisfied with the outcome of the dispute resolution process may seek a hearing before the SOAH and ultimately has recourse through the courts. *Id.* § 413.031(d). There was no evidence presented to show that the rules TWCC adopted prevent PAT from taking advantage of these defined procedures to challenge the reimbursement amounts paid for

medical services which are subject to the MARs. PAT and other health care providers in the workers' compensation system have an opportunity to be heard on the issue of their medical reimbursements.

## B. Substantive Due Process

█ In *Bullock v. Hewlett–Packard Co.*, we held that "legislative" administrative rules [6] violate due process when they are arbitrary and capricious. 628 S.W.2d 754, 757 (Tex.1982) (citing *Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 707 (Tex.1968)); *see also Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (the substantive due process guarantee protects against the arbitrary and oppressive exercise of government power, regardless of the fairness of the procedures). A rule is arbitrary and capricious when it lacks a legitimate reason to support it. *Bullock*, 628 S.W.2d at 757; *Gerst*, 432 S.W.2d at 707; *see also Lewis*, 523 U.S. at 846, 118 S.Ct. 1708 (the government acts arbitrarily when it exercises power without any reasonable justification in the service of a legitimate governmental objective). Administrative rules are supported by legitimate reasons when they are based on some legitimate position of the administrative agency promulgating them. *Bullock*, 628 S.W.2d at 756 (citing *Day v. United States*, 611 F.2d 1122, 1124 (5th Cir.1980)). "The rules need not be, in the court's opinion, wise, desirable, or even necessary." *Id.*

█ In this opinion, we conclude that the Legislature authorized TWCC to set upper limits on reimbursement amounts and establish a reasonable time limitation on requests for medical dispute resolution. TWCC acted consistently with the Legislature's mandates—(1) the establishment of

fair and reasonable guidelines designed to ensure quality medical care for injured workers, Tex. Lab.Code § 413.011(b), (2) the achievement of effective medical cost control in the workers' compensation system, *id.*, and (3) the establishment of a program for resolution of disputes regarding health care treatments and services, *id.* § 413.013(1). By furthering the Legislature's stated objectives for Texas's workers' compensation system, TWCC had legitimate reasons for promulgating the MARs and the one-year limitation rule.

Because PAT had notice and an opportunity to be heard, and the MARs and one-year limitation rule are not arbitrary and capricious, PAT's due process challenge fails.

## VIII. Conclusion

We hold that TWCC substantially complied with the procedural requirements of the APA in promulgating the Medical Fee Guideline and that TWCC did not exceed its authority by setting upper limits on reimbursement amounts for specified medical services or imposing a one-year limitation for initiating medical dispute resolution. We also hold that the Dispute and Audit Rules do not constitute a delegation of TWCC's audit or fee-setting powers. We therefore conclude that the trial court correctly granted TWCC's motion for summary judgment. Accordingly, we reverse the court of appeals' judgment and render judgment with respect to PAT's improper delegation claim, affirm the court of appeals' judgment on the other issues it addressed, and render judgment that neither the cap on fees for specified medical services nor the one-year time limitation for

---

**6.** A "legislative" administrative rule is one that is based on a grant of legislative power.

*Bullock*, 628 S.W.2d at 756.

initiating dispute resolution denies PAT's right to due process.

Justice SMITH filed a concurring opinion.

Justice SMITH, concurring.

The Court concludes that "a private insurance carrier's act of reviewing medical bills and determining a reimbursement amount when no MAR has been established [does not fall] within the legal definition of a delegation." 136 S.W.3d at 657. I agree but write separately to express my understanding that the carrier's reimbursement determination does not constitute an administrative rule and that a de novo determination of the "fair and reasonable" reimbursement rate [1] will be made in both the TWCC medical service review [2] and the SOAH contested-case hearing [3] without deference to the carrier's previous reimbursement determination.

---

1. *See* 28 Tex. Admin. Code § 134.1(c) (2004)("Reimbursement for services not identified in an established fee guideline shall be reimbursed at fair and reasonable rates as described in the Texas Workers' Compensation Act, § 413.011 until such period that specific fee guidelines are established by the commission.").

2. *See generally* Tex. Lab.Code § 413.031.

3. *See* Tex. Lab.Code § 413.031(k).