Motion for Rehearing Overruled and Supplemental Plurality and Concurring
and Dissenting Opinions on Rehearing filed February 10, 2005









Motion
for Rehearing Overruled and Supplemental Plurality and Concurring and
Dissenting Opinions on Rehearing filed February 10, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-02-01062-CV

_______________

 

TRIBBLE & STEPHENS CO., Appellant

 

V.

 

RGM CONSTRUCTORS, L.P.,
Appellee

______________________________________________________

 

On Appeal from the County Civil Court at
Law No. 3

Harris County, Texas

Trial Court Cause No. 713,187

______________________________________________________

 

S U P P L E M E N T A L   P L U R A L I T Y   O P I N I O N

O N   R E H E A
R I N G

Appellee
RGM=s Motion For Rehearing to this panel
is overruled.  We issue this supplemental
opinion in order to address certain questions raised by RGM regarding
preservation of error and our review of the summary judgment evidence.

A.        Preservation
of Error








In its
motion for rehearing, RGM contends the plurality ignored procedural
requirements of Rule of Civil Procedure 166a(c) and erred by reversing a
summary judgment based on an argument that was not raised either in the trial
court or on appeal.  Specifically, RGM
contends T&S did not assert that the contract is ambiguous in the trial
court, nor did it argue ambiguity as grounds for reversal in its initial
appellate brief.  However, the record on
appeal does not support RGM=s contention.

First,
we refer RGM to T&S=s Amended Third Supplemental Answer in which T&S asserted
that the subcontract is ambiguous relative to incorporation of the General
Conditions.  Second, we note T&S=s AReply to RGM=s Response to [T&S=s] Motion for Final Judgment &
[T&S=s] Reply to RGM=s Response to [T&S=s] Motion for Summary Judgment@ wherein T&S argued that the
subcontract is ambiguous Aas to incorporation of the modified General Conditions.@[1] 








We
further note that in its original appellate brief, T&S argued there are
fact issues Aconcerning the extent to which the
concrete work was to be exposed to public view, the resulting tolerance levels
for irregularities, which varied with the level of exposure, and whether RGM=s finished work was within those
tolerances.@ 
The summary judgment evidence indicates that the parties had two
distinct views regarding specifications for the concrete formwork in question
before this suit was filed.  Under this
appellate record, a claim that fact issues exist regarding tolerance levels and
Awhether RGM=s finished work was within those
tolerances@ is, in essence, a contention that
contract language has more than one possible meaning.  Consequently, this court is required to
review and interpret the entire contract, not just a specific section, in order
to determine the existence of fact issues precluding summary judgment.  In consideration of our standard of review
concerning cross-motions for summary judgment, we conclude that T&S
preserved error for appellate review regarding the existence of an ambiguity in
the contract.  See Tex. R. App. P. 38.9; see also Tex.
Worker=s Comp. Comm=n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004) (A[W]hen both parties move for summary
judgment . . . the reviewing court should review the summary judgment evidence
presented by both sides and determine all questions presented@).

B.        Applicable
Tolerance Issue

Regarding
the fact issue on applicable tolerances for concrete surfaces, it is important
to remember that RGM moved for summary judgment based on the contention that it
had fully performed its obligations under the subcontract, seeking full
payment.  Therefore, RGM, as movant, had
the burden to prove as a matter of law that it fully complied with the contract
terms.  T&S consistently disputed
this fact, asserting that RGM=s work did not comply with certain terms in the subcontract,
including Section 03300.  

In the
trial court, T&S did not specifically assert that the contract was
ambiguous relative to the applicable tolerances for finish of concrete
surfaces.  However, T&S did argue
that RGM failed to comply with the correct tolerances.  Indeed, whether RGM complied with the
contract terms, including specifications for concrete surfaces, was the central
issue in the case.  Both parties argued
that a different tolerance applied to RGM=s work and, of course, to resolve the
issue the court must interpret contract terms pertaining to tolerances.  In construing a contract, we begin by
determining whether the contract is enforceable as written. J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003).  In doing so, we cannot confine our review to
one section of the contract, as asserted by RGM.  We must read the whole contract in an attempt
to harmonize its provisions.  Id.  








RGM
contends there is no fact issue relative to tolerance levels for finish of
concrete formwork because T&S failed to rebut RGM=s summary judgment evidence that RGM
had reduced all offsets of formed surfaces to one-quarter inch tolerance.  Notably, RGM submitted the testimony of Bart
Dansby, T&S=s project manager, as part of its summary judgment evidence
and Dansby testified that the offsets were not within a quarter inch
tolerance. Moreover, under ACI-347Cessentially the only authority relied
upon by RGM to assert that the subcontract required a one-quarter inch
toleranceCAformed surfaces@ equates to the Afinish of exposed concrete.@ 
The parties do not dispute the fact that the concrete work at issue
consists of formed surfaces of Aexposed@ or Aexposed-to-view@ concrete.  In our plurality opinion, we acknowledged
that Aexposed-to-view@ concrete is included in the
definition of AExposed Concrete@ under Section 03100, 1.03(B) of the
subcontract.  We further acknowledged the
application of Section 03300, which addresses repairs to exposed-to-view formed
concrete surfaces containing defects affecting the aesthetic appearance and
finish of formed surfaces.  In the trial
court, the parties disputed whether part of the work rejected by architect
Campbell was a Class A, B, or C surface, as prescribed in ACI-347.  If some of the surfaces in question are Class
A (exposed-to-view), a one-eighth inch tolerance is prescribed under
ACI-347.  RGM=s contention that there is no fact
issue regarding tolerance levels because RGM=s concrete finish work was within
one-quarter inch tolerance is not tenable. 
Finally, regarding Section 03300, RGM notably does not address why,
although the subcontract specifically lists RGM=s work as including Acast-in-place@ concrete, the specifications
covering cast-in-place concreteCthat is, Section 03300Cdo not apply to its work under the
subcontract. 

We
acknowledge that this dispute over $12,564 worth of concrete construction work
has been litigated far too long by parties who seem quite willing to accept the
risk of a significantly disproportionate assessment of attorney=s fees and expenses.  However, in reviewing the summary judgment
evidence, we are guided by the supreme court=s admonition that all reasonable
inferences should be indulged and all doubts resolved in favor of the losing
party.  Univ. of Tex. Health Sci. Ctr.
v. Big Train Carpet Inc., 739 S.W.2d 792, 792 (Tex. 1987).  As stated in the plurality opinion, having
reviewed the contract as a whole and all of the summary judgment evidence, the
trial court=s summary judgment is reversed and
the case remanded for further proceedings.[2]









Finally,
T&S=s motion for modification is
denied.  Our statement in footnote 1 of
the plurality opinion shall not be construed as an interpretation or
disposition of the rights and liabilities of the parties to the subject stipulation.

 

/s/        Charles
W. Seymore

Justice

 

Motion for Rehearing Overruled and Supplemental
Plurality and Concurring and Dissenting Opinions filed February 10, 2005.

 

Panel
consists of Justices Edelman, Frost, and Seymore.  (Frost, J., concurring and dissenting.)
 (Edelman,
J., concurs in result only.)

 

 

 











[1]  Also, attached
to RGM=s Motion for Final Summary Judgment was the sworn
testimony of witness Kelly LaGrone who stated: 
“I think these documents are ambiguous.” 






[2]  Briefly, in
response to the dissent’s comments regarding the logic of our
extra-compensation claim analysis, unfortunately the dissent misreads our
analysis and interprets it in a vacuum, much like it has the provisions of the
subcontract.  True, we state in the plurality
opinion that “extra-compensation” implies compensation beyond the contract
price.  Tribble & Stephens Co. v.
RGM Constructors, L.P., No. 14-02-01062-CV, 2004 WL 2400983, at *17 (Tex.
App.CHouston [14th Dist.] Oct. 28, 2004, no pet. h.).  However, the problem with RGM’s argument
concerning this term is not the meaning given to it, but RGM’s suggested point
in time that we define it.  Certainly,
throughout this litigation, RGM has sought the full contract price.  Nevertheless, what RGM seeks in this
litigation is not determinative of what obligations RGM may or may not have had
under the terms of the subcontract.  When
paragraph 4.4 is read in conjunction with the other provisions of the
subcontract, and specifically those set out in the plurality’s analysis of the
issue, the characterization of the “claim” must be made with reference to the
genesis of the parties’ dispute.  Here,
the dispute between the parties arose when T&S notified RGM that Campbell
had rejected its work.  In its notice,
T&S also advised RGM that the deficiencies were contrary to the subcontract
specifications found in Section 03300. 
RGM subsequently met with Campbell, however, it unilaterally determined
that the subcontract did not require the surface finishes requested by
Campbell.  RGM failed to advise either
T&S or Campbell of its position and, ultimately, T&S hired another
subcontractor to complete the work, invoicing RGM for that cost.  RGM then demanded payment under the
subcontract and filed this suit to obtain it. 
Thus, RGM’s contention is in fact that T&S wrongfully withheld the
contract price because T&S wrongfully required RGM to perform work outside
the scope of the subcontract.  However,
as noted in the plurality opinion, the terms of the subcontract reflect the
parties’ anticipation that the project may require adjustments or changes in
the work and, to minimize disruptions in the work, a method for handling those
anticipated changes was prescribed. 
Whether RGM had an obligation to present its “claim,” that is, its
contention that it was being asked to perform work outside of the contract, can
only be determined with reference to its scope of work under the subcontract. To
conclude that RGM’s “claim” is not for “extra-compensation” merely because RGM
seeks to be paid the contract price, does not give full effect to these
applicable subcontract provisions. 
Finally, we note that the dissent’s discussion of “extra-compensation”
adds nothing to the conclusion in the plurality opinion that RGM failed to
establish it was entitled to judgment as a matter of law.