# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00364-CV

**Low Income Consumers, Mary Wilson and Hipolita Lutz, Appellants**

**v.**

**Public Utility Commission of Texas, Appellee**

## DIRECT APPEAL FROM THE PUBLIC UTILITY COMMISSION OF TEXAS RULEMAKING PROCEEDING NO. 47343

## CONCURRING AND DISSENTING OPINION

I respectfully dissent from the Court's determination that the Public Utility Commission complied with the Administrative Procedures Act's notice requirements as to the proposed rule regarding the split-deposit provision in former Rule 25.478(e)(3). *See* 16 Tex. Admin. Code § 25.478 (Pub. Util. Comm'n, Credit Requirements and Deposits); *see also* Tex. Gov't Code § 2001.023 (Notice of Proposed Rule). The Texas Supreme Court has described two standards that courts have applied to determine whether an agency's notice complies with the APA. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 649-50 (Tex. 2004). First, the Supreme Court explained this Court's standard in *State Board of Insurance v. Deffebach* that "if a proposed rule is changed to incorporate public comments and no new subjects of regulation or persons besides those previously given notice are affected, then no further purpose would be served by requiring republication of the proposed rule." *Patient Advocates*, 136 S.W.3d at 650 (citing *Deffebach*, 631 S.W.2d 794, 801 (Tex. App.—Austin

1982, writ ref'd n.r.e.)).  *Deffebach* premised its standard on the undisputed understanding that the "basic purposes" of the notice requirements "are to inform the public of the contents of the proposed rule and to give persons sufficient advance notice of the rule's content to permit them to ascertain whether protection of their interests requires them to request a hearing and participate therein."  631 S.W.2d at 800.  Second, the Supreme Court analyzed federal court precedents construing the federal Administrative Procedure Act, which contains notice requirements similar to those in Texas's APA.  *Patient Advocates*, 136 S.W.3d at 650.  The "majority of federal courts of appeals have held that under the federal APA the original notice is adequate if the modified final rule is a 'logical outgrowth' of the published provisions."  *Id.*  The Supreme Court concluded, "The relevant inquiry under both standards is whether the agency's notice fairly apprises affected parties of the pertinent issues to allow them to comment and participate in the rulemaking process in a meaningful and informed manner."  *Id.*  Ultimately, because the rule change at issue in *Patient Advocates* "did not materially alter the issues raised in the proposed rule or affect persons other than those previously on notice," it "was a logical outgrowth of the published provisions." *Id.* at 651.

The PUC provided notice of its change to the split-deposit provision by publishing the following proposed change to former Rule 25.478(e):

(e) Amount of deposit.

(1)-(2) (No change.)

(3) A[If a customer or applicant qualifies for the rate reduction program under §25.454 of this title (relating to Rate Reduction Program), then such] customer or

2

applicant shall be eligible to pay any deposit that exceeds $50 in two equal installments. Notice of this option ~~[for customers eligible for the rate reduction program]~~shall be included in any written notice to a customer from whom~~[requesting]~~ a deposit is requested.~~[ The customer shall have the obligation of providing sufficient information to the REP to demonstrate that the customer is eligible for the rate reduction program.]~~ The first installment shall be due no sooner than ten days, and the second installment no sooner than 40 days, after the issuance of written notification to the applicant of the deposit requirement.

42 Tex. Reg. 7495, 7506 (Dec. 2017). The PUC's notice thus proposed expanding the class of customers eligible to split deposits from those "eligible for the rate reduction program" to all customers paying "any deposit that exceeds $50." The persons affected by the proposed change were customers *not* previously eligible for the rate reduction program. However, by repealing the entirety of Rule 25.478(e)(3), the PUC provided for removal of the split-deposit option—a significantly different issue than the expansion of customers eligible to split deposits—thereby affecting customers who *were* previously eligible for the rate reduction program. Because the adopted rule "affect[ed] persons other than those previously on notice," it was not a logical outgrowth of the proposed rule. *See Patient Advocates*, 136 S.W.3d at 651. Nothing in the proposed rule suggested the possibility of subsection (e)(3) being deleted in its entirety. To the contrary, the PUC provided notice of its intent to repeal some sections entirely, but expressly provided notice of an intent to merely "amend 16 TAC . . . § 25.478, relating to Credit Requirements and Deposits," by making it applicable to all customers. 42 Tex. Reg. 7495. Under the PUC's theory that notice of expanding a rule's applicability to other customers

3

constitutes notice that the entire rule might disappear, the PUC could also justify expanding a rule to apply to any number of people after proposing that the rule be repealed in its entirety. While APA notice requirements should not be construed to automatically afford "a new opportunity for comment simply because the rule, as promulgated by the agency, differs from the rule the agency proposed," *Deffenbach*, 631 S.W.2d at 801, the PUC's concept of notice renders the APA's notice requirements all but meaningless, *see* Tex. Gov't Code § 2001.024 (requiring, inter alia, "a brief explanation of the proposed rule" and "the text of the proposed rule, except any portion omitted under Section 2002.014, prepared in a manner to indicate any words to be added or deleted from the current text").

The Court asserts that the statutory expiration of the SBF and the corresponding notice proposing repeal of the rate reduction program notified customers eligible for that program that they would not be entitled to split deposits "based on their previous enrollment in the rate reduction program," and the Court goes a step further, inferring that those customers were therefore "necessarily on notice that they . . . might or might not be entitled to the split deposit option going forward." But being ineligible to split deposits on a particular basis is not the same as being ineligible to split deposits *at all*, and the effect of the proposed amendment misled customers previously eligible for the rate reduction program to believe that the split-deposit option under § 25.478(e)(3) would remain available to them. Under the circumstances, customers previously eligible for the rate reduction program were not given "sufficient advance notice of the rule's content to permit them to ascertain whether protection of their interests require[d] them to request a hearing and participate therein." *Deffenbach*, 631 S.W.2d at 800. The PUC therefore failed to comply with the APA's notice requirements. As a result, I would conclude that the PUC had to republish notice of the proposed deletion of section 17.004(e)(3).

4

Although I concur in the Court's determination that the PUC had a reasoned justification for adopting changes to Rule 25.478(e), I do not agree that section 17.007(c) prohibits a split-deposit option for all customers. Generally, I agree that removing provisions relating to the expired SBF was a reasoned justification for the PUC's rule changes. However, removing the split-deposit option entirely was not required in order to align the rule with the expiration of the SBF, as evidenced by the PUC's proposed rule language that removes reference to the rate reduction program while leaving intact the split-deposit option, albeit for an expanded class of customers. In fact, section 17.004 of the Utilities Code expressly allows the PUC to provide for a split-deposit option by allowing the PUC to adopt and enforce rules "relating to customer deposits." Tex. Util. Code § 17.004(b). The bills creating section 17.004 and the SBF were enacted during the same legislature; section 17.004 provided general customer protection standards, while the SBF aimed to assist low-income customers, to provide customer education, and to fund schools through a funding loss mechanism. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1579, § 3, 1999 Tex. Gen. Laws 5421, 5423 (S.B. 86, codified at Tex. Util. Code § 17.004); Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 39, 1999 Tex. Gen. Laws 2543, 2597 (S.B. 7, codified at Tex. Util. Code § 39.903). The expiration of the SBF did not impact the PUC's unrelated authority under section 17.004 to provide for split deposits. Nor would the split-deposit option have run afoul of section 17.007(c). Section 17.007(c) prohibits requiring retail electric providers to offer customer service benefits "for which the provider or utility is not reimbursed." Tex. Util. Code § 17.007(c). Despite asserting that "there would be costs that would not be reimbursed," the PUC did not identify what those costs were. In the absence of costs that would not be reimbursed, section 17.007(c) does not apply.

I also concur with the Court's conclusion that the PUC was not statutorily obligated to retain the customer protections at issue in this case because the PUC has discretion over whether to offer these protections. However, I do not read section 17.004's protections as inconsistent with section 17.007's treatment of customer service benefits. In the bill that created section 17.004, the legislature expressly identified an "increased [] need for minimum standards of service quality, customer service, and fair business practices to ensure high-quality service to customers and a healthy marketplace where competition is permitted by law." Tex. Util. Code § 11.002(c). The legislature further provided, "It is the purpose of [chapters 11-17 of the Utility Code] to grant the Public Utility Commission of Texas authority to make and enforce rules necessary to protect customers of telecommunications and electric services consistent with the public interest." *Id.* The protections enacted in section 17.004 authorized the PUC to provide "minimum standards of service quality," including rules relating to customer deposits. These protections are not inconsistent with section 17.007's directive that any benefits required by the PUC must be reimbursed, even if we were to assume that "benefits" were synonymous with "protections" and that the protections at issue were shown to have had some additional cost.

For the foregoing reasons, I respectfully dissent from the Court's determination that the PUC complied with the notice provisions of the APA and, although I concur with the Court's other conclusions, I do not join the Court's reasoning related to section 17.007(c).

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Filed: April 30, 2020

6