# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00144-CV

**FM Express Food Mart, Inc. and Fouad Hanna Mekdessi, Appellants**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-00-002724, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final summary judgment in favor of the Comptroller in a tax protest suit challenging an assessment for additional sales taxes following an audit.[1] Appellants, FM Express Food Mart, Inc., and its sole shareholder, Fouad Hanna Mekdessi (collectively "FM Express"), challenge the summary judgment in two issues, arguing that (1) the Comptroller failed to follow the tax code and agency rules in conducting its audit of FM Express's sales-tax compliance, entitling FM Express to a new audit; and (2) sections 112.051, 112.052, and 112.101 of the Texas Tax Code are unconstitutional because they require taxpayers to prepay taxes before seeking judicial review of Comptroller assessments. We will affirm the judgment.

---

[1] Actually, both the Comptroller and the Attorney General were defendants in the suit, *see* Tex. Tax Code Ann. § 112.053 (West 2008) (requiring the Comptroller and the Attorney General to be named as defendants in tax protest suit), but because their interests in this litigation align, we will refer to them collectively as the "Comptroller" for convenience.

**BACKGROUND**

At relevant times, FM Express operated five convenience stores in Houston, Texas.[2] In 1998, the Comptroller audited FM Express for compliance with sales-tax laws during the tax periods between December 1, 1990 through November 30, 1997. According to the Comptroller, FM Express's failure to keep proper records of its sales necessitated that the Comptroller's auditor utilize estimated sales figures to calculate FM Express's sales-tax liability for the taxable periods at issue. The auditor estimated FM Express's sales by obtaining records from FM Express's suppliers, examining what was deemed a representative sampling of the records, and determining from these the amount of taxable goods that FM Express had purchased from its suppliers. To this figure, the auditor applied a standard markup on the goods, made adjustments or allowances to account for spoilage and food-stamp purchases, and arrived at the amount of sales for the sampled purchases. The auditor next extrapolated from these figures to calculate an estimate of sales for the entire audit period and then compared this estimate to the sales actually reported by FM Express. These calculations yielded a sales-tax deficiency of $765,727.50.

FM Express requested an administrative review of the Comptroller's deficiency before an administrative law judge (ALJ).[3] FM Express complained that the Comptroller had failed to provide it required notice about the sampling procedure it would use to estimate FM Express's sales and to properly estimate FM Express's taxes. FM Express also asserted that the Comptroller's

---

[2] Specifically, two of the stores were owned by Mekdessi individually and three by FM Express.

[3] *See* 34 Tex. Admin. Code § 1.22 (2012) (Comptroller of Pub. Accounts, Oral and Written Submission Hearings) (allowing taxpayer to request hearing before administrative law judge if the parties are unable to agree about the deficiency).

sample did not reflect FM Express's normal operating conditions; that the Comptroller had not used proper auditing methods or techniques; and that limitations barred recovery of the alleged deficiency for some of the audited tax periods. Finally, FM Express complained that it was improper for the Comptroller to assess a fraud penalty in the absence of a proper audit.

After a hearing, the ALJ agreed that limitations had run for the tax periods prior to October 1993, but otherwise affirmed the deficiency determination, adjusting it to exclude the deficiency amounts attributed to the pre-October 1993 periods. FM Express filed a motion for rehearing, which was denied. Thereafter, FM Express paid—under protest, they would later assert—a portion of the assessed deficiency.

At some point after the conclusion of the administrative process, the Comptroller initiated enforcement actions to collect the deficiency, including efforts to cancel FM Express's tax permits for failure to pay the deficiency and withholding refunds due FM Express from another state agency. This prompted FM Express to file suit in September 2000 seeking judicial review of the Comptroller's deficiency, declaratory relief, and temporary injunctive relief. Thereafter, the parties engaged in settlement negotiations and entered into a succession of Rule 11 agreements to stay the Comptroller's collection efforts in the meantime. In September 2003, FM Express paid the portion of the assessed deficiency still remaining unpaid.

However, FM Express's lawsuit remained pending. In July 2004, FM Express filed a motion for summary judgment on its claims, and the Comptroller countered with a cross-motion in January 2005. These motions were not adjudicated until 2011. Following a hearing, the district court denied FM Express's summary-judgment motion and granted the Comptroller's cross-motion. FM Express appeals.

3

FM Express brings two issues challenging the district court's ruling granting the Comptroller's summary-judgment motion and denying its own. First, FM Express argues that it, rather than the Comptroller, was entitled to summary judgment because the Comptroller's audit violated tax code provisions and agency rules that govern audits. Second, FM Express asserts that sections 112.051, 112.052, and 112.101 of the tax code violate the federal and Texas constitutions by requiring a taxpayer to pay its taxes before it can seek judicial review of the tax assessment. This prepayment requirement, FM Express argues, imposes an unreasonable burden on taxpayers seeking judicial review and acts as a barrier to judicial access.

**Standard of review**

We review the district court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215–16). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Where, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*,

22 S.W.3d 868, 872 (Tex. 2000).  We must affirm the summary judgment if any of the grounds asserted in the motion are meritorious.  *Patient Advocates*, 136 S.W.3d at 648; *FM Props*., 22 S.W.3d at 872.

**Comptroller audit**

The parties' cross-motions joined issue with respect to whether the Comptroller's audit of FM Express complied with the statutes and administrative rules governing estimated audits.  In its first issue, FM Express challenges the district court's conclusion that the Comptroller's audit complied with these requirements.  Specifically, FM Express contends that the tax code and Comptroller regulations expressly limit the Comptroller to two auditing methods to determine taxpayer liability:  "a detailed auditing procedure" or a "sample and projection auditing method."  *See* Tex. Tax Code Ann. § 111.0042 (West 2008) (describing circumstances under which sampling audit is appropriate);[4] 34 Tex. Admin. Code § 3.282(c) (2012) (Comptroller of Public Accounts,

---

[4] Section 111.0042 provides in relevant part that—

> (b)  Sampling auditing methods are appropriate if:
>
>   (1)  the taxpayer's records are so detailed, complex, or voluminous that an audit of all detailed records would be unreasonable or impractical;
>   (2)  the taxpayer's records are inadequate or insufficient, so that a competent audit for the period in question is not otherwise possible; or
>   (3)  the cost of an audit of all detailed records to the taxpayer or to the state will be unreasonable in relation to the benefits derived, and sampling procedures will produce a reasonable result.
>
> (c)  Before using a sample technique to establish a tax liability, the comptroller or his designee must notify the taxpayer in writing of the sampling procedure to be used.

Auditing Taxpayer Records) ("The comptroller may use a detailed auditing procedure or a sample and projection auditing method to determine tax liability."). Instead of using either of these two auditing methods to determine FM Express's tax liability, FM Express complains that the Comptroller used an "estimation method" that FM Express contends is not authorized under the tax code or relevant regulations. Further, FM Express argues that the Comptroller failed to notify FM Express in writing that it would use a sampling audit technique, *see* Tex. Tax Code Ann. § 111.0042(c), and that the Comptroller used a sample that did not reflect FM Express's normal business operating conditions, *see id.* § 111.0042(d). Consequently, FM Express reasons, it rather than the Comptroller was entitled to summary judgment. We disagree.

Tax code section 111.008(a) provides that when a taxpayer submits a tax report that the Comptroller finds unsatisfactory, the Comptroller "may compute and determine the amount

---

(d)     The sample must reflect as nearly as possible the normal conditions under which the business was operated during the period to which the audit applies. If a taxpayer can demonstrate that a transaction in a sample period is not representative of the taxpayer's business operations, the transaction shall be eliminated from the sample and be separately assessed in the audit. If records are inadequate to reflect accurately the business operations of the taxpayer, the comptroller or his designee shall determine the best information available and base his audit report on that information.

(e)     If the taxpayer demonstrates that any sampling method used by the comptroller was not in accordance with generally recognized sampling techniques, the audit will be dismissed as to that portion of the audit established by projection based upon the sampling method, and a new audit may be performed.

of tax to be paid from the information contained in the report or from any other information available to the comptroller." *Id*. § 111.008(a) (West 2008). We have previously held that section 111.008(a) allows the Comptroller to estimate taxes due based on such information as is available to the Comptroller, reasoning that "[w]here the taxpayer's own acts or failures cause the Comptroller to be without good or adequate information, then the Comptroller is justified in estimating the tax due." *See Alon USA, LP v. Texas*, 222 S.W.3d 19, 34 (Tex. App.—Austin 2005, pet. denied) (citing Texas Comptroller of Public Accounts, Decision No. 10,210 (1981)). Further, to implement and effectuate that statutory authority, the Comptroller has promulgated a rule specifically allowing it to "estimate the person's tax liability based on any available information" if the person fails to keep accurate records. *See* 34 Tex. Admin. Code § 3.281(c) (2012) (Tex. Comptroller of Pub. Accounts, Records Required; Information Required) (setting forth who must keep records, what records they must keep, and the consequences of failure to keep accurate records). Accordingly, the Comptroller is authorized to estimate taxes due.

FM Express, however, argues that there is no statutory or regulatory authority for the Comptroller to use estimation audits and that section 111.0042 and rule 3.282 require the Comptroller to use detailed audits or sampling audits. This argument is without foundation. First, as discussed above, section 111.008 gives the Comptroller broad authority to determine tax liabilities when it is not satisfied with a taxpayer's tax report, *see* Tex. Tax Code Ann. § 111.008(a), which both the Comptroller and this Court have interpreted to include estimating taxes due, *see* 34 Tex. Admin. Code § 3.281; *Alon USA*, 222 S.W.3d at 34. And importantly, neither section 111.0042 or rule 3.282 limit that broad authority. Section 111.0042 merely sets forth the circumstances under which the Comptroller *may* use a sampling method and the procedures for doing so. *See* Tex. Tax

7

Code Ann. § 111.0042. Likewise, rule 3.282 simply allows the Comptroller to use a "detailed auditing procedure" or a "sample and projection auditing method," without defining either of those terms.[5] Regardless, however, neither of these provision expressly contradicts the tax code's or rule 3.281's specific authorization to estimate taxes due on such information as is available to the Comptroller.

In the present case, the Comptroller determined, and FM Express does not deny, that FM Express failed to keep adequate records as required by the tax code. Thus, the Comptroller had the authority to conduct an estimated audit using records available to it, which included records from FM Express's suppliers. *See id*. § 111.008(a); 34 Tex. Admin. Code § 3.281; *Alon USA*, 222 S.W.3d at 34. Once the Comptroller conducted the audit using the information available and issued a deficiency determination, the burden shifted to FM Express to show that the audit determination was unreasonable, excessive, or that it was reached capriciously or arbitrarily. *See Alon USA*, 222 S.W.3d at 34 (holding that "where the tax cannot be determined with reasonable mathematical certainty from the available records, and the taxing authority declares the tax due from all information available that it deems reasonable, the burden to show that the determination was unreasonable, excessive, or that it was reached capriciously or arbitrarily, shifts to the complainant" (citing *Smith v. State*, 418 S.W.2d 893, 896 (Tex. Civ. App.—Austin 1967, no writ)); *Bullock v. Foley Bros. Dry Goods Corp*., 802 S.W.2d 835, 839 (Tex. App.—Austin 1991, writ denied) (holding that taxpayer has burden to show that Comptroller's audit is incorrect and noting that taxpayers have power to protect themselves by paying taxes and keeping required records); *see also*

---

[5] "The comptroller may use a detailed auditing procedure or a sample and projection auditing method to determine tax liability." 34 Tex. Admin. Code § 3.282(c) (Comptroller of Public Accounts, Auditing Taxpayer Records).

Tex. Tax Code Ann. § 111.013(a) (West 2008) (providing that Comptroller's certificate of delinquency is prima facie evidence of the amount due, the delinquency of the amount due, and "the compliance of the comptroller with the applicable provisions of [the tax] code in computing and determining the amount due").

But FM Express presented no summary-judgment evidence showing that the Comptroller's estimate was unreasonable, excessive, or that it was reached arbitrarily and capriciously. *See Alon USA*, 222 S.W.3d at 34. To the extent that it presented summary-judgment evidence, FM Express does not explain how that evidence establishes deficiencies in the audit. Likewise, although FM Express asserted in its pleadings that it established that the audit was not conducted according to generally recognized sampling techniques and that it did not reflect FM Express's normal business, that standard applies to sampling audits not estimations. *See* Tex. Tax Code Ann. § 111.0042(d) (requiring sampling audit reflect the taxpayer's normal business conditions), .0042(e) (requiring Comptroller to conduct sampling audit in accordance with generally recognized sampling techniques). Further, although it offered the auditor's deposition testimony as summary-judgment evidence, the examples to which FM Express points in support of its argument do not show that the Comptroller's audit was incorrect or unreasonable. First, FM Express asserts that the auditor's testimony that he limited his review of records to the beer and cigarette/tobacco information shows that the audit is incorrect or unreasonable. However, FM Express's motion for summary judgment did not include the auditor's entire deposition testimony, and his testimony regarding the beer and cigarette information standing alone does not show that the overall audit was incorrect or unreasonable, especially in light of the fact that FM Express's motion for summary judgment was limited to issues regarding the beer and cigarette calculations. FM Express also points

9

to the auditor's testimony that he used only six months of information to calculate the deficiency, but the evidence shows that the six months of information referred to involved a beer distributor that refused to provide records to the auditor without reimbursement and that FM Express sought and paid for the six months of invoices from that distributor. In other words, FM Express chose to pay for only six months of information from this particular supplier when it presumably could have paid for and received all the invoices. Regardless, evidence of the sample time period alone does not establish the unreasonableness or inaccuracy of the audit. Further, the evidence does not show that basing an audit on six months of information, which is the information the auditor had available to him, somehow rendered the audit unreasonable or unreliable. Similarly, FM Express argues that the auditor testified that he used only two months of information from another beer supplier to estimate the deficiency, but the auditor's actual testimony was that he reviewed two months of information *in preparation for his deposition.* In sum, FM Express presented no summary-judgment evidence showing that the Comptroller's audit of FM Express was unreasonable, excessive, or that it was reached capriciously or arbitrarily.

We overrule FM Express's first issue.

**Constitutional claims**

In its second issue, FM Express brings forward a challenge to the constitutionality of tax code sections 112.051, 112.052, and 112.101. *See* Tex. Tax Code Ann. §§ 112.051–.052, .101(a) (West 2008 & West Supp. 2012). These provisions operate to require, as a prerequisite to suit for recovery of taxes or injunctive relief to prevent the collection or assessment of a tax, that a taxpayer prepay under protest any taxes due at the time of suit. *See id.*; *see also R Commc'ns, Inc. v. Sharp*, 875 S.W.2d 314, 314–15 (Tex. 1994) (noting that section 112.051 conditions the right to

10

file suit attacking the tax's validity or its assessment or collection upon prior payment of the taxes, and that section 112.101 precludes injunctive relief without prior tax payment or posting a bond). FM Express argues that these provisions, by requiring prepayment as a requisite to suit, impose an unreasonable burden on litigants and create a barrier to courts in violation of the Texas Constitution's open courts doctrine. *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993) (noting that open courts provision guarantees, among other rights, that citizens have access to courts "unimpeded by unreasonable financial barriers" (citing *LeCroy v. Hanlon*, 713 S.W.2d 335, 342 (Tex. 1986)). In support of its argument here, FM Express cites to the Texas Supreme Court's decision in *R Communications*, which held tax code section 112.108 unconstitutional and void to the extent that provision precluded a taxpayer from obtaining judicial review of its tax liability by means of declaratory action. *See R Commc'ns*, 875 S.W.2d at 314–15.[6]

While we agree that there may be unresolved questions regarding the constitutionality of chapter 112's prepayment requirements given the supreme court's historical treatment of

---

[6] The Legislature has since amended section 112.108 to provide that a taxpayer, upon filing an oath of inability to pay, may be excused from prepaying requirements if those requirements constituted an unreasonable barrier to access to court. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 579, § 13, 1995 Tex. Gen. Laws 3374, 3377 (codified at Tex. Tax Code Ann. § 112.108). The Texas Supreme Court noted recently that this section "has since been amended to preclude an Open Courts violation," but it did not address whether it did so successfully. *See In re Nestle USA, Inc.*, 359 S.W.3d 207, 211 n.38 (Tex. 2012). Prior decisions by the supreme court have held that whether a party may be able to afford prepayment is irrelevant because the guarantee of constitutional rights does not depend on the balance of one's bank account. *See Central Appraisal Dist. v. Lall*, 924 S.W.2d 686, 692 (Tex. 1996); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 450 n.18 (Tex. 1993). And relying on these cases, we held in 2000 that section 112.108 was still unconstitutional despite the Legislature's 1995 amendment. *See Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 304 (Tex. App.—Austin 2000, pet. denied).

such provisions, we disagree that this matter is properly before this Court in this case. Chapter 112's prepayment requirements were not enforced against FM Express. Consequently, FM Express has not suffered an injury from those requirements. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995) ("[T]o challenge a statute, a plaintiff must first suffer some actual or threatened restriction under that statute.). Relatedly, the remedy that FM Express seeks is merely to have the case remanded to the district court and proceed to judgment without having to prepay the assessed tax liability. In other words, we would be remanding to the district court to re-do what has already been done. This confirms the absence of any justiciable controversy that a declaration regarding Chapter 112's constitutionality would resolve. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."); *Texas Ass'n of Bus.*, 852 S.W.2d at 446 (noting jurisdictional requirement that there be a real controversy between the parties that will be actually determined by the judicial declaration sought). Our declaration would, in other words, amount to a mere advisory opinion, which the Texas Constitution forbids. *See Brooks*, 141 S.W.3d at 164 ("A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution." (citing Tex. Const. art. II, § 1; *Tex. Ass'n of Bus.*, 852 S.W.2d at 444)).

We overrule FM Express's second issue on appeal.

**CONCLUSION**

Having overruled FM Express's issues, we affirm the district court's judgment.

12

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed:   March 15, 2013