**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00117-CV**
_____

**C.I.A. HIDDEN FOREST, INC., Appellant**

**V.**

**DEBORAH WATSON AND LARRY HARRIS, Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-04-04197-CV**

## MEMORANDUM OPINION

C.I.A. Hidden Forest, Inc. ("C.I.A.") appeals from a summary judgment in favor of Deborah Watson and Larry Harris (collectively "appellees") in a declaratory judgment action regarding C.I.A.'s authority to assess fees and obtain liens. In two appellate issues, C.I.A. challenges the trial court's granting of summary judgment in favor of appellees and the trial court's denial of C.I.A.'s motion for summary judgment. We reverse the trial court's summary judgment in favor of the appellees and remand the cause for further proceedings consistent with this opinion.

1

BACKGROUND

Appellees filed a declaratory judgment action against C.I.A., in which they asserted that they own six lots in section one of Hidden Forest Estates subdivision in Montgomery County. According to appellees, none of the deed restrictions applicable to their property impose a maintenance assessment or grant authority for a lien against the property. Appellees alleged that C.I.A.'s attempt to enforce an implied assessment lien against their property was invalid because C.I.A. "was never properly formed or adopted by Hidden Forest property owners as a property owners association." According to appellees' petition, C.I.A. "has attempted to impose rules, regulations, and assessment charges against [appellees]."

Appellees asserted that in September 2011, they received an initial demand from C.I.A. for $277.00, in which C.I.A. threatened to pursue a lawsuit for non-payment. Appellees pleaded that they advised C.I.A. that (1) no valid restrictions imposed a maintenance assessment or lien on their property, and (2) C.I.A. was not properly formed in accordance with the Texas Property Code and, therefore, lacked authority over appellees' property. According to appellees, C.I.A. demanded an additional $158.00 in February 2012, and asserted that appellees were bound by a 1997 judgment against another property owner, which permitted C.I.A. to collect maintenance fees and to impose a lien. Appellees state that they responded by

2

informing C.I.A. that they were not parties to the 1997 case. Appellees further pleaded that they requested an inspection of C.I.A.'s records, and that said inspection "provided nothing that authorized a maintenance assessment or lien and produced no statements, invoices, or other documents showing that [appellees] owed a debt or the amount of that debt." In addition, appellees alleged that C.I.A. sent another letter demanding $556.43 in fees and assessments in September 2014, followed by another letter demanding payment of legal fees in the amount of $785.94.

Appellees requested that the trial court declare that C.I.A. is not a valid property owners association under Texas law and therefore lacks authority to assess any sums against appellees' property or to impose liens on their property. Appellees also sought to recover attorney's fees and costs.

APPELLEES' MOTION FOR SUMMARY JUDGMENT

Appellees filed a traditional motion for summary judgment in which they asserted that no genuine issue of material fact exists as to their claim that C.I.A. is not a valid property owners association and therefore lacked the right to impose maintenance fees. Appellees also asserted that C.I.A.'s contention that implied rights and implied covenants allow it to charge maintenance fees is without merit, as is C.I.A.'s assertion that a twenty-year-old holding in a case to which appellees were not parties grants C.I.A. the authority to impose assessments and fines. According

3

to the appellees' motion for summary judgment, none of the deed restrictions applicable to the appellees' property imposed a maintenance assessment or granted authority for a lien against the property. Appellees stated that they had inspected C.I.A.'s records, checked public filings, and concluded that C.I.A. had not taken the required steps to become a valid property owners association.

Attached to appellees' motion for summary judgment as an exhibit was the affidavit of Larry Harris. In his affidavit, Harris averred that he and Watson own six lots in section one of Hidden Forest Estates. Harris averred that prior to September 2011, C.I.A. "had never sent us a statement purporting to charge us maintenance or other fees in connection with our ownership of property in Hidden Forest." Harris acknowledged that he and Watson paid a pool usage fee of $100 per year between 1993 and 2005. According to Harris's affidavit, he and Watson investigated records of public agencies, including Montgomery County and the State of Texas, to determine whether C.I.A. had taken the proper steps to become a property owners association, and they determined that C.I.A. had not done so. Harris averred that he and Watson have never been asked to sign a petition to create a property owners association in Hidden Forest and are unaware of such a petition being circulated during the time they have owned property or lived there. In addition, Harris averred

4

that he and Watson were not parties to the 1997 litigation between C.I.A. and another homeowner.

Appellees also attached as an exhibit excerpts from Watson's deposition. During the deposition, Watson testified that nothing in her deed restrictions allows C.I.A. to assess dues or maintenance fees, and the deed restrictions do not mention a homeowners association. Watson testified that she had never paid dues, but only paid $100 annually to use the pool from 1996 until 2005. Also attached as exhibits were fee statements from C.I.A. to Watson. In addition, appellees attached as an exhibit a chain of title summary for the six lots. Furthermore, appellees included as an exhibit a letter from C.I.A.'s counsel, in which C.I.A.'s counsel explained that since the 1997 lawsuit, "it has been the position of [C.I.A.] . . . that it has the good faith, right and obligation to collect assessments [on] behalf of the property owners in the Subdivision . . . [C.I.A.] represents." Counsel's letter also stated that counsel was enclosing C.I.A.'s certificate of account status with the Texas Comptroller of Public Accounts, "which confirms that [C.I.A.] is in good standing with the State of Texas."

C.I.A. filed a motion to strike Harris's affidavit, the chain of title summary, and the letter from counsel. The trial court signed an order striking only appellees' chain of title summary. C.I.A. also filed a response to appellees' motion for summary

5

judgment, in which it argued that it was incorporated in 1977, twenty years before appellees bought their first lot in the subdivision. C.I.A. asserted that it "gleaned the legal right, duty, and obligation to collect reasonable maintenance fees from subdivision lot owners based on the contracts entered into between it and Lake Hidden Forest Development Company. . . . Any authority Lake Hidden Forest had could be (and was) transferred to [C.I.A.]."

In addition, C.I.A. argued that, by paying fees from 1997 until 2005, appellees waived the right to later argue that C.I.A. lacks the proper authority to assess and collect fees. Furthermore, C.I.A. maintained that appellees "offer no explanation for why this Court should examine the same evidence that was available in [the 1997] case, and yet come to a different finding." C.I.A. argued that the trial court should grant C.I.A.'s own traditional motion for summary judgment, which we discuss below.

## C.I.A.'S MOTION FOR SUMMARY JUDGMENT

C.I.A. filed its own motion for traditional summary judgment, in which it stated, "After conducting discovery in this matter, the parties have concluded that there are no fact issues in dispute. Instead, the parties have agreed to file competing motions for summary judgment addressing [appellees'] declaratory judgment, namely whether [C.I.A.] possesses authority to assess any sums on [appellees']

6

property." C.I.A. asserted that the issue of its entitlement to collect reasonable maintenance fees had already been decided by the 221st District Court of Montgomery County in the aforementioned 1997 litigation. In addition, C.I.A. argued that appellees' properties are subject to an enforceable covenant to collect maintenance fees; appellees waived their right to dispute C.I.A.'s legal right to collect maintenance fees by paying fees until 2005; and C.I.A. must be allowed to collect maintenance fees "[a]s a matter of public policy[.]"

According to C.I.A.'s motion, Hidden Forest Estates is an unrecorded subdivision in Montgomery County, Texas, and C.I.A. "is a non-profit corporation, incorporated under the laws of the State of Texas in 1977." C.I.A. asserted that the original developer had the original purchasers of the lots sign a contract for deed, which notified the purchasers that they were taking the property subject to restrictive covenants, which would also be binding upon their successors. According to C.I.A., "[t]he contract for deed further informed the purchaser that they would be assessed a monthly levy for maintenance of streets and recreational facilities." C.I.A. pleaded in its motion that through a subsequent foreclosure purchase, Lake Hidden Forest Development Company became the successor in interest, and that in 1978 and 1979 Lake Hidden Forest Development Company agreed to convey its interests to C.I.A., including its interest in all deeds and contracts "relating to maintenance fees that

7

were due from any Hidden Forest Estate lot owner." C.I.A. alleged in its motion for summary judgment that it has assessed and collected annual maintenance fees since 1979. According to C.I.A.'s motion, Watson owns six lots and her husband, Harris, owns a lot, but the appellees have not paid their maintenance assessments since 2006. C.I.A. asserted that its covenant to collect maintenance fees was created as a covenant running with the land and as an equitable servitude.

Attached to C.I.A.'s motion as evidence were (1) findings of fact and conclusions of law from the 1997 litigation; (2) a contract for deed signed by an original purchaser; (3) a memorandum of agreement dated November 21, 1978; (4) an agreement and bill of sale dated January 2, 1979; (5) appellees' original petition for declaratory judgment; (6) a deed from Billy Hardin, conveying lots 31 and 32 in section one, executed in February, 1967; (7) Hidden Forest Estates Restrictions; (8) a check dated February 8, 2005; and (9) excerpts from Watson's deposition. In its findings of fact and conclusions of law from the 1997 case, the judge of the 221st District Court found that the original developer of Hidden Forest Estates had all purchasers sign a contract for deed; however, that court also found that only the restrictions for sections four and five specifically refer to a monthly assessment for

the streets and recreational facilities.[1] The judge in the 1997 case further found that "[a]side from references to maintenance fees found in the deed restrictions for Sections 4 and 5 of the subdivision, there is no other reference to maintenance fee assessments for Hidden Forest Estates found of record in the Real Property Records of Montgomery County, Texas."

In addition, the judge in the 1997 case found that Lake Hidden Forest Development Company agreed to convey its interest in all deeds and contracts relating to maintenance fees that were due from any lot owner in sections 1 through 5 of Hidden Forest Estates to C.I.A., as evidenced by the November 1978 memorandum of agreement and the January 1979 agreement and bill of sale. In its conclusions of law, the judge of the 221st District Court found that an implied covenant to pay maintenance fees runs with the lots in Hidden Forest Estates. The judge in the 1997 litigation further found that as owner of all common roadways, lake, dam, pool, buildings, park, and other facilities, C.I.A. "has a right as a matter of public policy to collect monthly maintenance assessments[.]" In addition, that court found that the original purchasers of lots in the subdivision intended to pay a maintenance assessment "and thereby committed themselves and their successors to

---

[1]As discussed above, the property owned by appellees is in section 1 of the subdivision.

pay maintenance fees, for the mutual benefit of all the property owners of the entire subdivision, even if this intent was never recorded in any document of record."

ISSUES ONE AND TWO

In issue one, C.I.A. challenges the trial court's granting of summary judgment in favor of appellees, and in issue two, C.I.A. challenges the trial court's denial of C.I.A.'s motion for summary judgment. We address C.I.A.'s issues together.

We review summary judgment orders *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for traditional summary judgment must establish that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence that raises a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record in the light most favorable to the non-movant, "indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). When, as in this case,

10

both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all of the questions presented, and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004). We must affirm the summary judgment if any of the grounds asserted in the motion are meritorious. *Id.*

Pleadings do not constitute competent summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). Opposing affidavits must be made on personal knowledge and must set forth facts that would be admissible in evidence. Tex. R. Civ. P. 166a(f). To be competent evidence to oppose a summary judgment, an affidavit must do more than make conclusory, self-serving statements that lack factual detail. *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.). "Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted." *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The thoughts and opinions of an interested witness, when related in a self-serving affidavit, are not easily disproved by his opponent. *Wise v. Dallas Sw. Media Corp.*, 596 S.W.2d 533, 536 (Tex. Civ. App.—Beaumont 1979, writ ref'd n.r.e.).

11

Neither party produced the deeds executed by appellees. In addition, neither party produced competent summary judgment evidence regarding whether C.I.A. was a non-profit corporation in good standing with the State of Texas. *See* Tex. Prop. Code Ann. § 204.004(b) (West 2014) (providing that a property owners association must be a non-profit and may be incorporated as a Texas non-profit corporation); *Pipkin*, 383 S.W.3d at 670; *Wise*, 596 S.W.2d at 536. Moreover, neither party produced evidence, whether by documents or affidavit, that the deeds signed by appellees contained the same restrictions as those signed by the original grantees, an example of which was included in the summary judgment evidence. Reviewing the summary judgment evidence presented by both sides, we conclude that neither appellees nor C.I.A. demonstrated that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. *See Tex. Workers' Comp. Comm'n*, 136 S.W.3d at 648. We sustain issue one, overrule issue two, reverse the trial court's summary judgment in favor of the appellees and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

12

Submitted on February 6, 2018
Opinion Delivered March 29, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.